UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JONATHAN BURKE,

                              Plaintiffs,

        v.                                          3:12-cv-1013

STATE UNIVERSITY OF NEW YORK,
INSTITUTE OF TECHNOLOGY AT UTICA/ROME;
SHERBURNE-EARLVILLE CENTRAL SCHOOL
DISTRICT & SUPERINTENDENT GAYLE
HELLERT, Individually,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff Jonathan Burke commenced the instant action against Defendants

claiming that he was retaliated against for engaging in protected speech and that he was

denied the equal protection of the laws.  Presently before the Court is Defendants' motion for

summary judgment seeking dismissal of the Complaint and Plaintiff's cross-motion pursuant

to Fed. R. Civ. P. 56(d) and for leave to file an amended complaint.

I.      **FACTS**[1]

Plaintiff Jonathan Burke joined the Sherburne-Earlville Central School District ("SECSD") in September 2000 as a teacher of sixth grade social studies.  At that time, Plaintiff was operating under a conditional teaching certificate issued by the New York State Education Department ("State Education Department").  In 2001, Plaintiff received a provisional teaching certificate permitting him to teach sixth grade social studies for a period of five years.  The certificate was to expire on August 31, 2006.

As on December 2005, Plaintiff had neither obtained his masters degree nor completed several other requirements necessary to apply for a permanent teaching certificate.  Plaintiff did obtain an extension of his provisional teaching certificate that permitted him to teach during the 2006-2007 school year.

At various times during the 2005-2006 and 2006-2007 school years, Defendant Superintendent Gayle Hellert encouraged Plaintiff to obtained his permanent certificate and advised that the failure to obtain a permanent certificate would result in termination.  On May 17, 2007, Hellert instructed Plaintiff to schedule a meeting with her "prior to May 24, 2007 to discuss [his] certification issues and [his] plan to become permanently certified."

---

[1] The following facts are taken from Defendants' Statement of Material Facts submitted pursuant to N.D.N.Y.L.R. 7.1(a)(3).  Although required to do so, Plaintiff failed to submit a responsive statement of material facts.  Id.  Accordingly, unless otherwise specified herein, Defendants' facts are deemed to be true.  Id; see also Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998).  Although Plaintiff claims to need additional discovery under Fed. R. Civ. P. 56(d) before responding to Defendants' motion, many (if not most) of the assertions in Defendants' Rule 7.1(a)(3) statement of material facts are within Plaintiff's own knowledge or easily ascertained by him without discovery.  He, therefore, reasonably was in a position to either admit or deny them.  In such circumstances, his failure to comply with Rule 7.1(a)(3) results in the factual assertions being deemed admitted.  See Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP, 612 F. Supp.2d 330, 348 (S.D.N.Y. 2009) (where "the Rule 56[d] affidavit makes no such showing [of a justified failure to come forward with admissible evidence on the point in question], the failure to admit or deny is not justified by a general claim that [he] has not had discovery.").

In June 2007, Hellert checked with the State Education Department's online website and learned that Plaintiff had not yet fulfilled the criteria for permanent certification. Plaintiff was warned that failure to obtain a certification or be clearly eligible for certification by August 1, 2007 would result in termination of his employment.

In the summer of 2007, Plaintiff applied to the State Education Department for an additional extension on his expired provisional teaching certificate. On the application, Plaintiff indicated that he expected to complete his master's degree by "Sept. 2006" and that he had completed all course work and was awaiting a grade on his thesis.

At the beginning of the 2007-2008 school year, Plaintiff was operating under a special time extension on his provisional certificate. His application for an additional extension was pending. As of February 2008, Plaintiff had not received a final grade on his masters thesis and not obtained his degree. On February 11, 2008, Hellert wrote Plaintiff advising that "the district will not be able to continue to employ you into the 2008-2009 school year" unless he met the certification requirements by August 1, 2008.

In March 2008, the State Education Department granted Plaintiff a further extension on his provisional teaching certificate, permitting him to teach during the 2008-2009 school year. Hellert continued to be in contact with Plaintiff concerning his certificate. On July 22, 2008, Hellert wrote Plaintiff asking him to "[p]lease submit proof of certification . . . or your resignation by August 4, 2008."

On August 8, 2008, Plaintiff delivered a letter to Hellert dated August 7, 2008 from Dr. Kahn, the professor in charge of Plaintiff's masters thesis, stating "Jonathan Burke has completed all requirements of a Masters of Art in the field of Information Design & Technology. . . ." Hellert later called Dr. Schneider, the interim Dean of the School of Arts &

Sciences at SUNY IT, during which time Hellert mentioned the letter Plaintiff provided from Dr. Kahn.  Schneider apparently indicated that Dr. Kahn was away on a family emergency and would not have been able to author the letter.  Suspicions arose concerning whether the letter from Dr. Kahn was authentic.  On August 26, 2007, Dr. Schneider wrote to Hellert and advised that Plaintiff had not completed the requirements for his masters degree.

On September 18, 2008, Hellert was contacted by the Chief of SUNY IT's Campus Police Department.  Chief Jecko appeared at Hellert's office and asked for a statement concerning her receipt of the letter from Dr. Kahn and her conversations with Dr. Schneider. Hellert complied.  On September 21, 2008, Plaintiff wrote an e-mail to each member of the SECSD Board of Education to request an opportunity to be placed on a future meeting agenda and to address them.  The Board of Education declined to speak with Plaintiff.

By February 2009, Plaintiff had not provided Hellert with information concerning the resolution of his obtaining a masters degree.  On March 18, 2009, Hellert requested a status update.  Plaintiff responded that he submitted his thesis, was complying with the requirements of SUNY IT and that the college would be hearing from his attorney.

In May 2009, Hellert contacted the State Education Department and learned that Plaintiff could not obtain any further extensions of his provisional certification.  By memorandum dated May 7, 2009, Hellert wrote to Plaintiff advising that he was not eligible for further extensions of his provisional certification, the failure to receive a master degree and obtain certification by September 1, 2009 would render him unemployable at the SECSD, and that if Plaintiff was unable to teach, the SECSD would commence a termination hearing under N.Y. State Ed. Law § 3020-a.

By e-mail dated May 29, 2009, Plaintiff tendered his resignation to Hellert and each member of the Board of Education.  Plaintiff wrote that he resigned effective August 7, 2009, unless he received his permanent certificate before that time.  Plaintiff also requested an opportunity to address the Board, which request was granted.  Plaintiff and his attorney were permitted to speak with the Board during executive session on June 8, 2009.  Thereafter, on that same date, the Board voted to accept Plaintiff's resignation, subject to the request contingency concerning his receipt of his permanent teaching certificate.  By August 7, 2009, Plaintiff had not received his masters degree.  Plaintiff's sixth grade social studies position was thereafter filled by Bryan Niedt.

Plaintiff then commenced the instant action claiming that he was retaliated against for engaging in protected speech before the Board of Education and that he was denied the equal protection of the laws.  Presently before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56, Plaintiff's cross-motion to adjourn the summary judgment motion as premature pursuant to Fed. R. Civ. P. 56(d) and for sanctions pursuant to Fed. R. Civ. P. 11, and Plaintiff's motion for leave to file an amended complaint.

## II.        STANDARD OF REVIEW

Defendants move for summary judgment pursuant to Rule 56.  It is well settled that, on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A

- 5 -

party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

With these standards in mind, the Court will address the pending motion.

**III.     DISCUSSION**

**a.     Plaintiff's Motion for Sanctions**

In his cross-motion, Plaintiff moves for sanctions against Defendants because he believes that Defendants did not act in good faith in representing to the Court that there were no genuine issues of material fact precluding summary judgment.  This motion must be denied because it fails to comply with the procedural requirements of Fed. R. Civ. P. 11(c)(2) that requires that a Rule 11 motion "be made separately from any other motion" and provides for a 21 day opportunity for Defendants to cure any conduct alleged to violate Rule 11. Plaintiff complied with neither of these requirements.

In any event, the motion also must be denied as without any basis.  Plaintiff claims that sanctions are warranted because "Defendants have interpreted [Supreme Court cases] to require that they identify only those portions of the record which support their position on summary judgment, although there exists evidence to the contrary of which Defendants are aware."  Pl. Mem. of Law at 6.  Plaintiff continues to write that "Defendants maintain throughout their 'motion' that the burden of producing such evidence is on the Plaintiff as the party opposing summary judgment, and that he failed to meet that burden."  <u>Id</u>.  Plaintiff contends that "[i]n the absence of any discovery whatsoever, the Defendants clearly cannot certify to the Court that to the best of their knowledge, information and belief, there was no genuine issues of material fact precluding summary judgment, which they had an obligation to do."  <u>Id</u>. at 7.

Plaintiff misapprehends the nature of a summary judgment motion and the parties' respective burdens.  As previously explained, a party may move for summary judgment on a claim by showing that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>see also</u> <u>Hayden Pub. Co., Inc. v. Cox Broadcasting Corp.</u>, 730 F.2d 64, 68 (2d Cir. 1984) (stating that the burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute).  If a defendant meets this burden by, among other things, citing to particular parts of the material in the record, <u>see</u> Fed. R. Civ. P. 56(c)(1)(A), then the plaintiff has the burden of demonstrating that "the materials cited do not establish the absence . . . of a genuine dispute. . .," Fed. R. Civ. P. 56(c)(1)(B), or citing to particular parts of the material in the record demonstrating the existing of a genuine dispute.  Fed. R. Civ. P. 56(c)(1)(A).  The non-moving party has "the burden of coming forward with specific facts showing the

existence of a genuine issue for trial." <u>Smith v. American Exp. Co.</u>, 853 F.2d 151, 154 (2d

Cir. 1988).  If a plaintiff fails to show that there is evidence that would permit a rational

factfinder to find in his favor, then summary judgment dismissing the claim is appropriate.

<u>Patterson v. County of Oneida, N.Y.</u>, 375 F.3d 206, 221 (2d Cir. 2004).  Conclusory

allegations unsubstantiated by the record evidence are insufficient to defeat a motion for

summary judgment.  <u>Smith</u>, 853 F.2d at 155.

 The mere fact that no formal discovery has taken place does not preclude the filing

of a motion under Rule 56.  A defendant may move for summary judgment "at any time until

30 days after the close of all discovery."  Fed. R. Civ. P. 56(b).  This includes filing such a

motion before any formal discovery has taken place.  Rule 56 has an explicit procedure for

dealing with situations when a party is able to demonstrate that, for specified reasons, it

cannot present facts essential to opposing a summary judgment motion.  <u>See</u> Fed. R. Civ. P.

56(d).  In such a situation, as will be explained in more detail below, the non-moving party

must "by affidavit or declaration," <u>id</u>, specify (1) the nature of the uncompleted discovery; (2)

how the facts are reasonably expected to create a genuine issue of material facts; (3) what

efforts the affiant has made to obtain those facts; and (4) why those efforts were

unsuccessful.  <u>Paddington Partners v. Bouchard</u>, 3 F.3d 1132, 1138 (2d Cir. 1994).

 Here, Defendants submitted motion papers asserting factual assertions that they

contend are not in dispute.  In support, they submitted affidavits and documentary evidence.

This is entirely proper.  In opposition, Plaintiff claims that there are contrary facts, but does

not specify any such facts.  Plaintiff failed to submit and affidavit or any other evidence in

opposition to the motion.  Upon consideration of Defendants' motion, including the materials

submitted in support thereof, the Court finds that there is no basis upon which to conclude

that the motion was not made in good faith or was presented for any improper purpose.

> **b.    First Amendment Retaliation**

Defendants move to dismiss the First Amendment retaliation claim on the grounds

that Plaintiff did not engage in protected speech, he did not suffer an adverse employment

action, and his speech was not a motivating factor in any adverse actions.  In support,

Defendants contend that Plaintiff's speech concerned only his own personnel matters and

not matters of public concern, he did not speak out in a public forum, he did not suffer an

adverse employment action because he voluntarily resigned, and there is insufficient

evidence suggesting that Plaintiff's speech motivated any adverse actions.  In opposition to

Defendants' motion for summary judgment, Plaintiff claims that "he was subject to criminal

prosecution as a result of his First Amendment activities."  Specifically, Plaintiff claims that he

wrote a letter to the Board of Education on or about September 20, 2008 and, that "[s]hortly

thereafter [he] . . . was charged with Possession of a Forged Instrument."  Plaintiff also

claims that Defendants forced him to resign and that he was denied the opportunity to

become a permanent substitute teacher in retaliation for engaging in protected speech.

To establish a claim of retaliation under the First Amendment, Plaintiff has the

burden of demonstrating the following elements: (1) that he engaged in protected speech; (2)

that his exercise of his First Amendment rights motivated Defendants' actions; and (3) he

suffered an adverse employment action.  See Hafez v. City of Schenectady, — F. Supp.2d

—, — (N.D.N.Y. 2012) (D'Agostino, J.).

"Whether an employee's speech addresses a matter of public concern is a question

of law for the court to decide, taking into account the content, form, and context of a given

statement as revealed by the whole record." Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999). "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" Ruotolo v. City of New York, 514 F.3d 184, 189 (2d Cir. 2008) (quoting Lewis, 165 F.3d at 163-64).

The first speech claimed to be protected by the First Amendment is a September 21, 2008 e-mail from Plaintiff to the members of the SECSD Board of Education. Upon review of this letter, it is clear that this is not protected speech. The substance of that e-mail pertained to Plaintiff's employment situation with the SECSD and the investigation concerning the authenticity of the letter from Dr. Kahn. Considering the overall context, tone, format, and content of the e-mail, it cannot reasonably be read to be addressing a matter of public concern.

The same analysis applies to the May 29, 2009 letter Plaintiff sent to the members of the Board of Education. In that letter, Plaintiff submits his resignation and explains the circumstances surrounding his resignation and his time at the SECD. The overall content, context, form, and tone of the letter implicates Plaintiff's own personal situation and does not relate to any matter of political, social or other concern to the community. Accordingly, this is not protected speech.

The last instance of speech claimed to be protected occurred on June 8, 2009, where Plaintiff appeared before the Board of Education in executive session. According to the unverified Complaint (and the unverified proposed Amended Complaint):

> Plaintiff attended a School Board meeting with legal counsel, and advised the Board of the reasons for his resignation, and his objection to the direct involvement that the Superintendent played in the delay of his permanent certification, and in filing the false criminal charge against him.

Compl. at ¶¶ 59, 72.  According to Hellert, Plaintiff's "oral comments to the Board were similar to the statement he made in his defense in his letter of resignation. . . . [H]e never directly accused me of misconduct."  Hellert Aff. at ¶ 79.  In light of the undisputed evidence before in the record, the Court finds that, considering the tone, content, form, and context of his speech on June 8, it is not protected by the First Amendment.  Once again, Plaintiff was speaking about his personal situation; not on matters of public concern.

Because Plaintiff's speech is not protected by the First Amendment, his retaliation claims must be dismissed.

Assuming, arguendo, that Plaintiff's speech is protected, he has failed to proffer sufficient evidence from which it reasonably can be concluded that the institution of criminal charges or the request for his resignation were motivated by his speech.  The undisputed evidence demonstrates that the investigation into the authenticity of the letter from Dr. Kahn commenced **prior** to September 21, 2008 - the date Plaintiff claims to have first engaged in protected speech.[2]  The undisputed evidence similarly demonstrates that Hellert provided a statement to the Chief of the University Police concerning the Kahn letter on September 18, 2008, which, again, is **prior** to September 21.  Nowhere in the statement does Hellert accuse Plaintiff of engaging in illegal conduct.  Rather, the statement states, in sum and substance, that she received a letter from Dr. Kahn on August 8, 2008, that Dean Schneider raised a question concerning the authenticity of the letter during an August 26, 2008 discussion, that she faxed a copy of the Kahn letter to Dean Schneider, and that Dean Schneider indicated

---

[2] Although Plaintiff claims that the date is "on or about September 20, 2008," the undisputed documentary evidence submitted by Defendants shows that the e-mail from Plaintiff to the Board of Education was dated September 21, 2008.

that the letter may not be authentic.  Further, there is no evidence, admissible in form, that

Hellert (or any other Defendant) filed criminal charges against Plaintiff, caused charges to be

filed, or otherwise participated in the criminal process other than providing a statement to

Chief Jecko.[3]  Accordingly, there is no basis upon which a fair minded trier of fact could

reasonably conclude that Defendants filed criminal charges on account of Plaintiff's speech.

　　　　With respect to Plaintiff's resignation, the record is replete with evidence that

Defendants intended to terminate Plaintiff's employment in the event he was unable to obtain

his permanent teaching certificate.  Such actions by Defendants commenced at least as

early as 2007, long before Plaintiff engaged in any protected speech in 2008.  In May 2009,

long after the purported protected speech of September 2008 and before Plaintiff spoke with

the Board of Education in June 2009, Defendants sent Plaintiff a memorandum advising that,

if he did not provide proof that he obtained his certification by September 1, 2009 they would

commence a termination proceeding under New York State law.  Specifically, the

memorandum reads, in relevant part, as follows:

> Should you not receive a grade on your Masters thesis and therefore not receive
> your Masters, you will then not qualify for your permanent certification.  Therefore,
> you will not be able to be employed at Sherburne-Earleville on September 1, 2009.
>
> The District would then need to commence 3020a proceedings.  As I indicated, this
> would not be beneficial to you in the future as this action would remain on your
> record and you would need to acknowledge this on future employment applications.
> . . .
>
> I would like to bring this issue to a close by June 1, 2009. . . . Please submit to me
> a transcript indicating your final grade and/or your permanent certification or your
> resignation by June 1, 2009.

---

[3] Although Plaintiff claims in his complaint that Hellert filed the criminal complaint, the complaint is
unverified and he submits no evidence substantiating this allegation, particularly in light of Hellert's denial
that she did anything other than give a statement to Chief Jecko.

Nothing about this memorandum, which, again, is long removed from the any protected speech in September 2008 and before any protected speech in June 2009, suggests it was motivated by Plaintiff's speech. Rather, this was the natural progression of a long process during which Plaintiff was advised that his employment would be terminated if he could not obtain permanent certification. By the plain terms of the memorandum, Defendants would not have sought Plaintiff's resignation if Plaintiff obtained his masters degree. Similarly, the undisputed documentary evidence demonstrates that the Board of Education accepted Plaintiff's conditional resignation; that is, a resignation which was subject to revocation if Plaintiff obtained a permanent certification prior to August 7, 2009. In other words, Defendants would have allowed Plaintiff to continue teaching if he obtained his teaching certificate by that time. Indeed, Hellert concedes that she "had no issues with [Plaintiff's] performance as a teacher. . . ." Hellert Aff. at ¶ 74. Further, Plaintiff retained the right to seek a hearing under state law, but, apparently chose to provide a resignation instead to avoid the potential collateral consequences of a hearing. The undisputed record reasonably supports but one conclusion - that any changes in the terms and conditions of Plaintiff's employment were the result of his failure to obtain a permanent teaching certificate.

### c.    Equal Protection

Plaintiff also claims that he was denied the equal protection of the laws because he was terminated from his employment and replaced by a female. Defendants move to dismiss this claim on the ground that Plaintiff's job was filled by a male; not a female and, thus, there is no evidence Plaintiff was treated differently from another employee on account of a protected classification. In support, Defendants submit the affidavit of Hellert stating that Plaintiff's position was filled by Bryan Niedt, a male, and also submit a "Teacher's Notification

of Appointment to Probation" indicating that Bryan Niedt was "duly appointed . . . to a

probationary period in the area of <u>Social Studies</u> to begin 9/1/09." Defs.' Ex. W. Defendants

also submit an affidavit from Hellert stating that she advised other teachers that they would

be terminated if they did not timely obtain permanent certification and that she has never

encountered another teacher who failed to obtain permanent certification within the

maximum allowable extension period. In opposition, Plaintiff submits no evidence or other

information tending to suggest that his position was filled by a female, that gender was a

motivating factor in the decision to terminate him or replace him, or that he was treated

differently from any other employees on account of his being a member of a protected class.

Accordingly, the equal protection claim is without merit.

     **d.**     **Rule 56(d)**

     Plaintiff moves pursuant to Fed. R. Civ. P. 56(d) claiming that summary judgment is

premature because he has not yet conducted discovery. The rules in this Circuit concerning

applications under Rule 56(d) are well settled. To obtain relief, the litigant must submit an

affidavit showing: (1) what facts are sought to resist the motion and how they are to be

obtained; (2) how those facts are reasonably expected to create a genuine issue of material

fact; (3) what effort the affiant had made to obtain the facts; and (4) why the affiant has been

unsuccessful in his efforts. <u>Miller v. Wolpoff & Abramson, L.L.P.</u>, 321 F.3d 292, 303 (2d Cir.

2003).

     Plaintiff's motion under Rule 56(d) must be denied as to the First Amendment

retaliation claim. As previously noted, whether speech is protected by the First Amendment

is an issue of law to be determined by the court. Any evidence concerning the substance,

context, form, content, and timing of Plaintiff's speech is within his own control. Plaintiff fails

to articulate why he needs discovery concerning e-mails that he wrote or statements that he made to the Board of Education.  Plaintiff, himself, is in possession of the facts pertinent to this issue.  If Plaintiff claims to have spoken out on matter of public concern, including whether the superintendent of schools may have engaged in misconduct, then he should have been able to submit an affidavit detailing his statements.  Plaintiff did not submit an affidavit in opposition to Defendants' motion.  Accordingly, the Court cannot discern any reason why additional discovery was needed on this issue before addressing Defendants' motion.

As to the Equal Protection claim, Plaintiff erroneously states that the sole evidence in support of Defendants' motion is the Hellert affidavit.  The Hellert affidavit was substantiated by documentary evidence.  Plaintiff does not identify what evidence he has, or he is likely to discover, that is relevant to this claim.  Rather, he simply avers that, upon information and belief, that "there are affiants willing to testify in support of the Plaintiff's claims, if subpoenaed."  Agola Aff. at ¶ 83.  Plaintiff does not identify these affiants or purport to identify the substance of their testimony.  Plaintiff similarly does not identify what information he seeks to discover to refute this contention, how it will be obtained, how it is reasonably expected to raise a genuine issue of material fact, what efforts he has made to obtain such information, or why any such efforts have been unsuccessful.  Accordingly, relief is not warranted under Rule 56(d).

IV.       **CONCLUSION**

          For the foregoing reasons, Defendants' motion for summary judgment is granted and the Complaint is DISMISSED in its entirety.  The Clerk of the Court is directed to close the file in this matter.

IT IS SO ORDERED.

Dated: November 29, 2012


Thomas J. McAvoy
Senior, U.S. District Judge